### UNITED STATES v. BELTS (two cases).

(Circuit Court, D. Oregon. December 4, 1911.)

### Nos. 3,572, 3,677.

PUBLIC LANDS (§ 120*)—SUIT FOR CANCELLATION OF PATENTS—FRAUDULENT ENTRIES.

 Defendant, who was a large owner of sheep which he pastured on the public lands, procured different persons to file homestead and stone and timber claims on lands within his range, paying their filing fees, the ex-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

penses of their residence and improvements, the purchase price of the land on commutation of entries, and a further sum to each entryman, all of whom conveyed their lands to him on obtaining title. The homestead entrymen did not comply with the law as to residence and improvement, and their proofs were fraudulent. *Held*, that such facts were sufficient to show that the entries were made under an agreement or understanding, express or implied, with defendant that they were for his benefit, and that the United States was entitled to a cancellation of the patents for fraud.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*

Rights acquired by homestead settlements and entries, see note to McCune v. Essig, 59 C. C. A. 434.]

In Equity. Suit by the United States against Douglas Belts. Two cases. Decrees for complainant.

John McCourt, U. S. Atty.

Raley & Raley and Fee & Slater, for defendant.

WOLVERTON, District Judge. These cases, two in number, were argued and submitted on the merits at the same time, and will be considered together. The purpose of the first case, No. 3,572, is to have annulled and declared void, for fraud practiced in their procurement from the government, three homestead patents, namely, one issued to Phy T. Belts December 11, 1903, covering the N. E. ¼ of the N. E. ¼ of section 32 and the N. W. ¼ of the N. W. ¼ of section 33, and the W. ½ of the S. W. ¼ of section 28, township 2 S., range 33 E., W. M.; one to Lloyd O. Sheek, on the same date, covering the N. ½ of the N. E. ¼, and S. W. ¼ of N. E. ¼, and S. E. ¼ of N. W. ¼ of section 21, township 2 S., range 33 E., W. M.; and one to Frederick L. Forbes January 28, 1904, and three timber and stone patents issued, one to Philander T. Belts July 2, 1904, covering the E. ½ of the N. E. ¼, S. W. ¼ of the N. E. ¼, and the S. E. ¼ of the N. W. ¼ of section 7, township 3 S., range 34 E., W. M.; one to Martha M. Belts September 9, 1904, covering the S. ½ of the N. W. ¼, W. ½ of the S. W. ¼ of section 20, township 2 S., range 35 E., W. M.; and one to Howard H. Harvey, the same date, covering the S. ½ of the N. E. ¼ of section 8, township 3 S., range 34 E., W. M.

The purpose of the second case, being No. 3,677, is to have annulled, for a like fraud, two homestead patents, one issued to Ollie Cotner October 22, 1904, covering lot 2 and the S. ½ of the N. E. ¼ of section 3, and the S. W. ¼ of the N. W. ¼ of section 2, township 3 S., range 34 E., W. M.; and one to Sarrah E. Wilson December 1, 1904, covering the S. W. ¼ of the S. E. ¼, E. ½ of the S. W. ¼, and N. W. ¼ of the S. W. ¼ of section 2, township 3 S., range 34 E., W. M. The defendant Belts has succeeded by deeds from the patentees to the title to all these lands.

It is charged, in effect, by the complainant that the defendant, with a view to obtaining the title to these lands, procured the patentees to make false and fraudulent homestead and timber and stone entries, and false and fraudulent proofs respecting the same, so that the entrymen might obtain patents from the government, with the under-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

standing and agreement entered into with each of said entrymen, at the time and before the entries were made, that he or she, as the case might be, should convey the land to the defendant when the title was acquired. The proofs satisfactorily show that all the entries and proofs, intermediate and final, as it pertains to all the claims in question save the Forbes homestead, were fraudulently made, with the tacit, if not the express, understanding that the title in each instance, when acquired from the government, should be conveyed to the defendant, and was thereby to inure to his benefit. It is unnecessary to analyze the evidence, or to discuss its bearings in detail. It is sufficient simply to recount in a brief way the causes which induced the arrangements for obtaining the title from the government, and the way in which it was accomplished.

The defendant had for many years been grazing sheep, of which he was a large owner, upon a certain range within the public domain, which comprised the lands in question. Encroachments began to be made by persons taking up lands within the range. The defendant, fearing he would be disturbed thereby, conceived the idea of procuring parties friendly to him to take up the land, with the expectation that they would sell to him when titles were obtained from the government. In pursuance thereof, he solicited persons to make entry of lands within his accustomed range, and procured others to make such solicitations, in particular one William Rahe. Rahe was instrumental in getting Ollie Abel (now Cotner) and Sarrah E. Wilson (now Estes) to make homestead entries upon portions of the lands in question. In each of these instances the defendant furnished the description of the lands to be taken. He also paid all expenses of making the entries, and all the entrymen's expenses in going upon the lands, and in doing what they did to further their purpose. Commutation was finally made in each case, and defendant paid all the expenses of making final proof, and also the government price required to be paid in such cases. Furthermore, he paid to Cotner and Estes each $125. Neither of the parties made any improvements, nor were they even upon the land more than two or three times, and then to remain not to exceed a few hours. So that there was scarcely a pretense of complying with the law in their acquirement of title.

Philander T. Belts is a brother of the defendant. He made entry of his homestead involved here, and he and his wife each made entry of a claim under the timber and stone act. Act June 3, 1878, c. 151, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545). Howard H. Harvey also made entry of his claim under the timber and stone act. The testimony of Philander T. Belts is positive to the effect that, as to each of the claims of himself and wife, there was only a colorable compliance with the law; that his brother, the defendant, defrayed all the expenses attending the same, and, when final proofs were made, paid the government price required to be paid for the land; and, further, that there was a previous understanding and agreement between them that defendant should pay to him and his wife each $300 for the claims acquired under the timber and stone act, and should pay him $100 for his homestead. Philander T. Belts further testifies that defendant told him that Lloyd O. Sheek was acquiring his

homestead under a like arrangement and agreement with defendant. Sheek made no improvements on his homestead, and defendant admits that he paid all expenses attending the acquisition of the title from the government. As to the Howard H. Harvey timber and stone claim, Philander T. Belts testifies that the defendant told him that he (defendant) had Harvey take up the claim for him, and that he was to pay Harvey $50 for it. This conversation, according to witness, took place while he (witness) and defendant were negotiating relative to the timber and stone entries of himself and wife. It further appears that Philander T. Belts and defendant were witnesses to the final proof made by Harvey, and that Harvey and the defendant were witnesses to the final proof of Mrs. Belts.

The defendant denies that there was any previous agreement or understanding with any of these parties to purchase their land when title was acquired by them. If it be that there were no such express agreements, there must have been a tacit agreement in each case. Defendant was the only person vitally interested in procuring the titles, and he was paying all the expenses, even to the extent of the purchase price of the land from the government; and was it not expected, and even understood, that he was finally to acquire the title by purchase from the entrymen, and this on an understanding reached at or before the time the entries were made? It seems not within the bounds of reason that it could be otherwise. As it pertains to the homestead claims, he was party, either directly or through his agent Rahe, in the fraud perpetrated upon the government in the acquirement of the ultimate title, and as to none of the claims can he claim as an innocent purchaser from the grantees. I conclude, therefore, that the government is entitled to a decree annulling all of the patents in question, except the one issued to Frederick L. Forbes, as to which there has been no proof adduced to impeach its validity.

Let a decree be entered accordingly.